STATE of Missouri, at the Relation of WA-BASH RAILROAD COMPANY, a Corporation, Relator-Appellant,

v.

PUBLIC SERVICE COMMISSION of Missouri, and Tyre W. Burton, Charles L. Henson, E. L. McClintock, Henry McKay Cary, and Maurice W. Covert, as Members of said Public Service Commission, Respondents.

No. 44180.

Supreme Court of Missouri.

Division No. 2.

Nov. 8, 1954.

Motion for Rehearing and to Transfer to Court en Banc Denied Dec. 13, 1954.

J. H. Miller, Gilbert A. Schuessler, St. Louis, for Wabash R. Co., relator-appellant.

Thomas A. Johnson, Frank J. Iuen, for respondent.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for State Highway Commission.

BROADDUS, Special Judge.

This is an appeal by the Wabash Railroad Company from the judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission in regard to two grade crossings.

The proceedings were begun on June 22, 1951, by the filing of formal applications by the State Highway Commission with the Public Service Commission, in which the appellant, Wabash Railroad Company, was named as defendant. In Public Service Commission Case No. 12,197, the Highway Commission asked for an order requiring appellant to "install and maintain additional crossing protection" at a grade crossing near Pattonsburg, formed by the intersection of Route U. S. 69 with the Omaha Branch Line railroad of appellant; and in Case No. 12,198 it applied for a similar order relative to a grade crossing near Stanberry, formed by the intersection of Route U. S. 169 with appellant's Omaha Branch Line.

Pursuant to the Public Service Commission's order to satisfy or answer in each of the cases appellant duly filed its answer therein. In Case No. 12,197 the County Court of Daviess County filed its petition to intervene on July 16, 1951, and in Case No. 12,198, the County of Gentry filed its petition to intervene on July 20, 1951. Pursuant to notice public hearing was held by the Public Service Commission on October 24, 1951, at which time the cases were consolidated and the petitions to intervene granted. After the filing of briefs, the Public Service Commission on March 14, 1952, issued a single order in the consolidated cases which required the installation of automatic flashing light signals at each of the crossings, divided the cost of installation of the signals equally between the Highway Commission and the appellant, and allocated to the appellant all of the cost of maintenance and operation of the signals.

The record discloses that the State Highway Commission has constructed and is maintaining a State Highway in Daviess County, designated as Route U. S. 69. This highway crosses the main line tracks of appellant's Omaha Branch Line approximately one-fourth to one-half mile northeast of Pattonsburg. The Highway Commission has also constructed and is maintaining a State Highway in Gentry County,

known as Route U. S. 169. This highway also intersects the main line track of appellant. The Stanberry station is approximately one mile east of the point of crossing.

In its application the Highway Commission alleged that the appellant railroad company has installed and now maintains inadequate crossing protection at both grade crossings, and in view of the accident record at said crossings and traffic upon said highways and railroad tracks, should install and maintain additional crossing protection, thereby making them safer crossings. Similar allegations appeared in the intervening petitions filed on behalf of the two counties.

As to the Pattonsburg Crossing the evidence disclosed that beginning at a point 250 feet north of the crossing the highway ascends to the north on a 5 per cent verticle curve to a point approximately 900 feet north of the crossing where it descends to the northeast crossing a bridge over Big Creek. To persons traveling south over the highway, this hill and curve would obscure the railroad crossing. At night headlights of southbound vehicles would not bear on the crossing until reaching a point approximately 250 feet north of crossing.

Scheduled rail traffic over this crossing consists of two passenger and two freight trains per 24 hour periods. A highway traffic count disclosed that 4,742 vehicles passed over the crossing within a 24 hour period.

Three accidents have occurred at this crossing between December 1949 and June 1951 injuring seven persons. These accidents occurred between the hours of 7:10 p.m. and 2:20 a.m.

Appellant's Engineer of Signals and Communications testified that it would cost $6,447.24 to install automatic flashing light signals at this crossing with an annual operating maintenance cost of $542.92. This installation would provide 25 seconds advance warning of a train approaching at a speed of 45 miles per hour.

The same witness also testified that it would cost $6,606.53 to install automatic signals at the Stanberry crossing and $387.30 annually to operate and maintain them.

A witness for the Highway Commission testified that a traffic count made in 1950 indicated that an average of 1400 vehicles passed over the Stanberry crossing each 24 hour period. This witness also testified that on April 24, 1951 at 11:30 p.m. an accident occurred at this crossing in which four people were killed and one or two injured.

At the time of the hearing the protection of both crossings consisted of standard cross-buck warning signals and highway advance warning signs.

The Public Service Commission found that the crossings "are hazardous to the traveling public using these crossings and that the crossing protection now provided at said crossings is inadequate; that automatic flashing light signaling equipment should be installed at both crossings to provide better and more adequate protection."

No one can dispute the correctness of the proposition set forth under appellant's Point I that: "The order of the Public Service Commission is reviewable by this Court to determine its reasonableness and lawfullness, whether it is supported by competent and substantial evidence upon the whole record, and whether it violates constitutional requirements of due process of law under both the United States and Missouri Constitutions."

And the same can be said of the rule that the orders of the respondent are prima facie lawful and reasonable. As said by this Court in State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 985, 70 S.W.2d 52, 54: "* * * the question is not whether this court or the trial court would have made the same order upon the facts, but that the sole question is whether the order which the commission made was reasonable and lawful, and that the burden

of proof is upon the appellant to show that it is unreasonable and unlawful."

Appellant's second point is that the Public Service Commission committed reversible error when it refused to receive in evidence appellant's seventeen exhibits. Briefly, those exhibits are (1) A statement showing the number of gallons of motor fuel used on the highways of Missouri for each of the years 1917 to 1949, inclusive; (2) A statement showing the number of train miles operated by the Wabash Railroad Company and its predecessors for each of the years 1900 to 1950, inclusive; (3) A graph showing by lines the number of train miles operated by the Wabash and the amount of motor fuel used in Missouri as set forth in Exhibits 1 and 2; (4) A graph appearing at the top of page 6 of a booklet entitled "The Achievement of Grade Crossing Protection" written by the witness which shows the relationship between fluctuations of traffic and number of accidents; (5) A statement showing the number of miles of road operated by Wabash and its predecessors for each of the years 1900 to 1950, inclusive; (6) A statement showing the number of gallons of fuel used on the highways in the United States for each of the years 1919 to 1949, inclusive; (7) A graph showing the highway use of motor fuel in the United States and the highway use of motor fuel in Missouri according to the statistics shown on Exhibits 1 and 6; (8) A statement showing the total number of motor vehicles registered in Missouri and showing separately the number of automobiles, trucks and busses for each of the years 1900 to 1949, inclusive; (9) A graph showing by two lines the number of trucks and busses registered in Missouri and the number of motor vehicles registered in Missouri and also shows according to year of origin various significant events; (10) A statement showing the number of revenue passengers carried by Wabash and its predecessors for each of the years 1900 to 1950, inclusive; (11) A graph showing by two lines the number of passengers carried by Wabash and the number of automobiles registered in Missouri; (12) A graph showing the same statistical items as Exhibit 11 but differing in that the scale for the number of passengers is inverted, the zero point being at the top, so as to show more clearly the relationship between the increase in the number of automobiles registered and the decrease in passengers carried; (13) A statement showing the number of locomotive units of Wabash and its predecessors available for service for each of the years 1900 to 1951, inclusive; (14) A graph showing by three lines locomotive units of Wabash available for service, number of motor vehicles registered in Missouri and number of trucks and busses registered in Missouri; (15) A statement showing expenditures in Missouri for construction of state-administered highways for each of the years 1914 to 1949, inclusive; (16) A statement showing expenditures in Missouri for maintenance of state-administered highways; (17) A statement showing receipts and disbursements for state-administered highways in Missouri for each of the years 1945 to 1949, inclusive.

The Commission found that these exhibits are too general in nature; that they do not reflect nor indicate actual conditions, past or present, at the crossings under consideration, and that they have no probative value that would assist the Commission in determining a fair and equitable apportionment of the installation costs for automatic protective equipment at these crossings.

The true basis of apportionment of the costs has been declared by this court to be the extent to which the presence of the railroad at the place enhances the cost of a necessary improvement. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 995, 70 S.W.2d 57, 60. None of the seventeen exhibits pertained specifically to either of the crossings in question. The Commission did not commit prejudicial error in excluding them.

Appellant's third contention is that the order of the Public Service Commission constitutes the taking of appellant's property without due process of law in violation of the 14th Amendment to the Constitution

of the United States and Art. 1, § 10 of the Constitution of Missouri, V.A.M.S.

■ Under this point appellant relies (as it does under its Point II) upon the case of Nashville C. & S. L. Ry. Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949. This is not the first time this court has had occasion to consider that case. In State ex rel. Wabash Ry. Co. v. Public Service Commission, 340 Mo. 225, 100 S.W.2d 522, 528, 109 A.L.R. 754, we said:

"The case of Nashville, C. & St. L. Ry. v. Walters comes nearest of all the cases cited to being an authority supporting the contention of the Wabash. The separation in that case, however, was not ordered primarily to promote safety, nor was there an inconvenience to the traveling public at the grade crossing. Note what the court said: 'The traffic on that highway was, and is, small. The grade crossing has presented no serious interruption to traffic.' Again the court said: 'The underpass was prescribed, not upon consideration of local safety needs, but in conformity to general plans of the federal and state highway engineers, as being a proper engineering feature in the construction of a nation-wide system of highways for high-speed motor vehicle transportation.' The statute of the state of Tennessee required one-half of the cost of the grade separation to be assessed against the railroad. The railroad challenged its constitutionality. In obedience to the statute the Commission had assessed one-half of the cost against the railroad. The Supreme Court of the United States held that the Commission and the state courts should have determined from all the facts and circumstances whether an assessment of one-half of the cost was unreasonable, and indicated that if it was a lesser sum should be levied irrespective of the provisions of the statute. In other words, if the statute required an unreasonable amount to be paid by the railroad the statute would be unconstitutional under the due process clause."

As there pointed out the improvement involved in the Walters case was not prescribed because of " 'local safety needs' ". Not so in the instant case. Here the Commission found that the crossings "are hazardous to the traveling public, using these crossings."

For many years railroad companies have been claiming that the allocation of costs made against them by the respondent for the improvement of their facilities deprives them of their property without due process of law in violation of the XIV Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of this State, V.A.M.S. This Court as early as 1924 in State ex rel. Wabash Ry. Co. v. Public Service Commission, 306 Mo. 149, 267 S.W. 102, loc. cit. 108, ruled on this contention when it said:

"It cannot be longer doubted that a railroad holds its right and title to cross or occupy the public highways upon condition that, when such occupancy or use renders them dangerous to human life, the state has plenary constitutional power to require the railroads to separate the grades and to go under or over the highways, as the state may direct, and impose the entire cost of so doing upon the railroad. Erie R. R. Co. v. Board of Public Utilities, 254 U.S. 394, 41 S.Ct. 169, 65 L.Ed. 322; State [ex rel. St. Joseph Ry., Light, Heat & Power Co.] v. Public Service Commission, 272 Mo. [645] 650, 199 S.W. 999."

In State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission, 331 Mo. 438, 53 S.W.2d 868, loc. cit. 871, a 1932 opinion written by Judge Hyde, the Court again disposed of this contention, stating: " * * * Such a contention has been overruled by this court in State ex rel. Kansas City Term. R. R. Co. v. Public Service Comm., 308 Mo. 359, 272 S.W. 957, and Chicago, R. I. & P. Ry. Co. v. Public Service Comm., 315 Mo. 1108, 287 S.W. 617, and by the Supreme Court of the United States in Erie Railroad Co. v. Board of Public Utility Commissioners, 254 U.S. 394, 41 S.Ct. 169, 65 L.Ed. 322. It is a matter of the exercise of the police power of the state in the interest of public safety. The cost of such an improvement cannot

be imposed upon a railroad merely because it is a railroad, but, where the presence of the railroad company's tracks and the condition of its right of way makes a public street crossing dangerous and hazardous to the public, the state has a constitutional right to require improvements which will decrease the danger. * * *"

A similar ruling on the same question was made by this Court in State ex rel. Alton R. Co. v. Public Service Commission, supra [334 Mo. 985, 70 S.W.2d 53] in which the Court said: "* * * The authorities do not sustain the proposition that the order violates the constitutional provisions suggested. * * *" In making this pronouncement the Court cited numerous authorities in support thereof. In our opinion appellant's contention lacks merit. Two recent decisions of the Supreme Court of the United States sustain our view. Atchison, Topeka & Santa Fe Ry. Co. v. Public Utilities Comm. and (Southern Pac. Co. v. Public Utilities Comm.) 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. ——.

Appellant contends that the apportionment to it of fifty per cent of the cost of installation and all of the cost of maintenance of signal protection at the two crossings is unreasonable and unlawful.

Appellant's position is that "any hazard that now exists at these crossings is attributable almost entirely to the change of character in highway traffic over these crossings, both in increased amount and higher speed." Its argument, in the final analysis, is that the railroad was there at a time when the crossing was not unduly hazardous, and the public is bound to maintain the status quo, or change such at its peril. Such argument loses sight entirely of the fact that the courts have held to the contrary, that the cost of protection at crossings or separation of grade crossings is apportioned not on the basis of benefits received but on the basis of the extent to which the presence of the railroad track makes necessary the improvement proposed. State ex rel. Alton R. Co. v. Public Service Commission, supra; State ex rel. Wa-

bash Ry. Co. v. Public Service Commission, 306 Mo. 149, 267 S.W. 102; State ex rel. Kansas City Terminal Ry. Co. v. Public Service Commission, 308 Mo. 359, 272 S.W. 957. The public cannot be forced to bear the expense of doing what appellant is bound to do by police regulation. Franklin County v. Mo. Pac. Ry. Co., Mo., 210 S.W. 874. In apportioning the cost for additional protection, it is the duty of the parties involved which controls. Chicago, Rock Island & Pacific Ry. Co. v. Public Service Commission of Missouri, 315 Mo. 1108, 287 S.W. 617.

■ Appellant further attempts to fortify its position in this respect by pointing out that if the Highway Commission had elected to apply for federal aid for the installation of additional signal protection at the crossings involved, no more than ten per cent of the cost of installation could be apportioned to the railroad. This court has heretofore determined that appellant has no concern with where, when and how the State will spend funds allocated to it by the Federal Government. Chicago, R. I. & Pac. Ry. Co. v. Public Service Commission, supra. We rule the point against appellant.

■■ Appellant also says that the Commission's order contains findings of fact clearly contrary to the evidence. There is no real merit in this contention. Appellant likewise contends that the Commission failed to take into consideration its order made in 1928 in which there was a finding that the Pattonsburg Crossing under conditions then existing was not unduly hazardous. Certainly a finding made at that time would not be binding upon respondent when the question of danger and hazard at the crossing was raised again twenty-three years later.

We conclude, as did the learned Circuit Judge, that the finding of the Commission was not arbitrary or unreasonable. The judgment is affirmed.

LEEDY, Acting P. J., ELLISON, J., and BENNICK, Special Judge, concur.