441 S.W.2d 742 (1969)
STATE of Missouri ex rel. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellant,
v.
PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent.
No. 25131.
Kansas City Court of Appeals, Missouri.
April 7, 1969.
Rehearing Denied June 2, 1969.
*743 Hale Houts, Thad C. McCanse, Neal E. Millert, Kansas City, for appellant, James, McCanse & Larison, Kansas City, of counsel.
*744 Jeremiah D. Finnegan, Acting Gen. Counsel, Jefferson City, for respondent.
HOWARD, Presiding Judge.
This is an appeal from the judgment of the Cole County Circuit Court affirming an order of the Public Service Commission requiring appellant railroad company to install flashing light signals at a grade crossing of its rail line at Mile Post 111 + 32 in Maries County, Missouri. The evidence is that the installation of such flashing light signals would cost approximately $10,000.00 and that annual expense of maintenance and operation would be approximately $500.00 per year. This appeal first went to the Supreme Court of Missouri but that court determined that it did not have jurisdiction because the constitutional issues asserted by appellant were not properly raised; because the issues raised involved only statutory construction and not construction of the Constitution, and because the amount in dispute did not vest the Supreme Court with jurisdiction. The case was accordingly transferred to this court. 429 S.W.2d 723.
This proceeding was instituted by the Public Service Commission after having received the petition signed by 51 residents of Maries County complaining of the hazardous condition of the grade crossing. The commission set the hearing on its own motion and notified the Rock Island, Maries County, Missouri, and Special Road District No. 4 of Maries County to be present. At the hearing the evidence showed that the road in question runs from Maries County Highway J, across the Rock Island tracks and dead-ends at the Gasconade River. While the road and the rail line both run at angles at the point of the crossing, we shall refer to the road as running north and south and the rail line as running east and west. This is a gravel road and three families live on it south of the grade crossing. One family has two children of school age. Eight or ten other people own farm land, access to which is had by this road, and members of the public use the road to get to the Gasconade River for purposes of fishing and other recreational activities.
The rail line slopes downhill to the west of this grade crossing and curves through a cut some 16 to 20 feet deep. To the east of the road, the rail line curves through a cut 8 to 10 feet deep. As one comes out from the river in a northerly direction and approaches this grade crossing, he could see west (left) from 80 to 300 feet down the track as he approached from 100 feet back from the crossing to a point 25 feet from the crossing. To his right or east, he could see approximately 400 feet. As one approaches this grade crossing from the north going toward the river his line of sight to the west (his right) would vary from 80 feet to 150 feet as he traveled from 100 feet away from the crossing to a point 25 feet from the crossing. To his left or east, he could see from 200 feet to 300 feet down the track. It appears that the trains on this track travel at approximately 25 to 35 miles an hour. They travel faster going downhill on the slope to the west than when they are pulling uphill going east. The members of the families living to the south between the crossing and the river must use this crossing daily to get to and from their homes. The 8 to 10 other people owning land south of the crossing must use the crossing to get to and from their farm land carrying feed, supplies and equipment used on the farms and stock and crops from the farms to market. Thus, the vehicular traffic consists of automobiles and trucks and farm tractors pulling equipment. Also, the crossing is used for carrying and driving livestock to and from the farms. Several witnesses who use this crossing to get to their homes or farm lands, plus a member of the highway patrol and the Safety Supervisor for the Public Service Commission, all testified that this crossing was dangerous because the cuts through which the rail line goes and the curves in the track resulted in short sight distances at the crossing. There had been one wreck at the crossing a few years before the hearing and several near-misses. On *745 the advice of the highway patrol, the school bus was not permitted to cross this crossing and mail was not delivered to the families residing south of the crossing because of the danger in using this crossing.
The Public Service Commission concluded that this crossing was dangerous and the evidence supported such a finding. To relieve this dangerous condition, the Public Service Commission ordered the installation of flashing light signals at the grade crossing and the total cost was apportioned to the railroad. From this order, the railroad has appealed.
It contends that the Public Service Commission was without jurisdiction to proceed in this matter on the complaint of private individuals or on the commission's own motion because of the requirements of Section 389.640, R.S.Mo., 1959, as amended, V.A.M.S.; that the commission is bound by provisions of a prior order affecting this grade crossing and there has been no change of condition subsequent to the date of this prior order and that the order of the commission assessing all of the costs against the railroad is arbitrary and capricious because there is no competent and substantial evidence to support such apportionment. There are two statutes concerning the authority of the Public Service Commission in this matter. Section 386.310, R.S.Mo., 1959, V.A.M.S., provides in pertinent part in paragraph 1 thereof as follows:
"1. The commission shall have power, after a hearing had upon its own motion or upon complaint, * * * to require every person, corporation and public utility, to maintain and operate its line, * * * tracks and premises in such manner as to promote and safeguard the health and safety of its employees, passengers, customers, and the public, and to this end to prescribe, among other things, the installation, use, maintenance and operation of appropriate safety and other devices or appliances, including interlocking and other protective devices at grade crossings or junctions * * *."
Section 389.640, R.S.Mo. 1959, as amended, V.A.M.S. paragraph 2, reads as follows:
"The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of each crossing of a public road or highway by a railroad or street railroad and of a street by a railroad or vice versa, so far as applicable, and to alter or abolish any such crossing, at grade or otherwise, of a railroad by a public road, highway or street whenever the commission finds that public convenience and necessity will not be adversely affected and public safety will be promoted by so altering or abolishing such crossing, and to require, where, in its judgment it would be practicable, a separation of grades at any such crossing heretofore or hereafter established, and to prescribe the terms upon which such separation shall be made and the proportion in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the state, county, municipality or other public authority in interest; provided, however, that any agreement entered into after October 13, 1963, between any such corporation and the state, county, municipality or other public authority in interest, as to the apportionment of any cost mentioned in this section, shall be final and binding upon the filing with the commission of an executed copy of such agreement. If such parties are unable to agree upon the apportionment of said cost, the commission shall, except as to projects of the state highway commission, *746 apportion the cost among the parties according to the benefits accruing to each. In determining such benefits, the commission shall consider all relevant factors including volume, speed and type of vehicular traffic; volume, speed and type of train traffic; savings, if any, which will inure to either party as the result of the project; and advantages to the public and to such corporation resulting from the elimination of delays and the reduction of hazard at the crossing. Any portion of the cost of any such project in excess of such benefits shall be apportioned to and assessed against the corporation, county, municipality, or other public authority desiring to make, or proposing, such installation, alteration, abolishment or separation."
As indicated, the railroad contends that the Public Service Commission can only proceed under the latter statute and that Section 386.310 is not applicable. This is on the basis that where we have two statutes, one being general and the other being specific, the provisions of the specific statute must govern to the exclusion of the general statute. In certain circumstances where there is an irreconcilable conflict between the provisions of a specific and general statute, the doctrine contended for by the railroad does apply. However, where, as here, we have two separate statutes dealing with the same subject matter, the two must be read together and harmonized and force must be given to the provisions of each. Where the provisions of the more specific statute conflict with the provisions of the general statute, then the provisions of the specific statute must be enforced. See State ex rel. City of St. Louis v. Public Service Commission, 335 Mo. 448, 73 S.W.2d 393; State ex rel. Central Surety Ins. Corporation v. State Tax Commission, 348 Mo. 171, 153 S.W.2d 43; and Veal v. City of St. Louis, Mo., 289 S.W.2d 7. In the present case, these two statutory sections are in pari materia and must be construed together and harmonized if possible. Section 386.310 standing alone would clearly authorize the action of the Public Service Commission in the case at bar. The commission is specifically empowered to proceed on its own motion or upon complaint. It is specifically authorized to require protective devices at grade crossings where it is necessary for the safety of the railroad employees, passengers and the public. This was done in this case.
However, the railroad contends that because Section 389.640 provides for the apportionment of costs between the parties in interest, such proceeding can only be initiated by the railroad or by the public body interested therein and that absent such application the Public Service Commission is powerless to proceed to protect the interest of the traveling public. We do not believe that this contention is well taken. Section 389.640 does not require such a holding. It does not specifically limit the authority of the Public Service Commission in such matters to instances where an application has been made by a railroad or an interested public body. Neither do we believe that any provision of this section can be construed to so require by implication, and in the absence of such limitation the authorization contained in Section 386.310 empowering the commission to proceed upon its own motion and on complaint by members of the public is applicable, and specifically authorized the procedure followed in the case at bar. The two statutes can be harmonized and force given to the provisions of each. We therefore conclude that the Public Service Commission did have authority under the statutes cited to proceed in this matter as they did and to enter the order which is here challenged.
In the year 1950, the Public Service Commission entered an order in its case No. 11944, which affected the grade crossing here in question. This prior case came before the commission on the joint application of Maries County, Special Road District No. 4 of Maries County, and the Chicago, *747 Rock Island and Pacific Railroad Company, for approval of an agreement theretofore entered into concerning the grade crossings at Mile Post No. 111 + 00, Mile Post No. 111 + 07, and Mile Post No. 111 + 32 (the last being the crossing in the case at bar). The Public Service Commission approved the agreement of the parties and permitted them to proceed accordingly. Under this agreement and under the resulting order of the Public Service Commission, the grade crossing at Mile Post No. 111 + 07 was closed. The railroad was to "daylight" the grade crossing at Mile Post No. 111 + 00. It appears that the term "daylight" refers to the removal of earth and rock from the right-of-way so as to increase the sight distance at the grade crossing. Further, the railroad was to construct a 16 foot diversion road over its right-of-way to divert traffic from Mile Post No. 111 + 07 to the improved crossing at Mile Post No. 111 + 00. The county and the road district were to provide and pay for crushed rock or gravel for the diversion road and to thereafter maintain the same. Further, Maries County and the Special Road District were to daylight the grade crossing at Mile Post No. 111 + 32 according to plans submitted, and to cut timber and brush adjacent to the crossing. The agreement and order did not separate the obligations of the county and the road district but imposed duties on them jointly. The railroad contends that the county and the road district did not perform the work ordered in this prior case; that it is this failure that results in the dangerous condition of the crossing at the present time; and that the Public Service Commission should be required to enforce the performance of its prior order and is without authority to make any further order as to this grade crossing at Mile Post No. 111 + 32. We do not so construe the applicable statutes. While there is no doubt that the Public Service Commission has authority to enforce its orders, such authority does not prevent further orders concerning the safety of the grade crossing at the present time.
Although the railroad vigorously contends that the work required by the prior order was not done, the Public Service Commission found that the prior order had been substantially complied with and the record shows that this finding is supported by the evidence. The president of the Special Road District testified that the county and road district cleared away the brush and removed the earth as required by the agreement in Case No. 11944 and that everything that was required had been done. The plans referred to in the prior order in Case No. 11944 required moving of earth only in the northeast quadrant of the intersection. One witness testified that shortly prior to the present hearing, he had visited the crossing and could see that at some time in the past, dirt had been removed from this northeast quadrant. While the railroad engineer testified that nothing had been done to daylight at Mile Post No. 111 + 32, this testimony does not require a finding contrary to the specific evidence just summarized.
As was pointed out by the Supreme Court in State ex rel. Wabash Railroad Company v. Public Service Commission, Mo., 273 S.W.2d 334, the prior ruling of the commission as to safety of a grade crossing is not binding on the commission on such question of safety in later years. The fact that in 1950, the Public Service Commission approved an agreement whereby the grade crossing in question was to be daylighted does not prevent the commission in 1966 from finding that the same crossing is still dangerous and requiring the installation of additional safety devices for the protection of all of those using the crossing.
The railroad contends that the proceeding here in question constitutes a collateral attack upon the commission's order in Case No. 11944. It cites and relies upon such cases as State ex rel. State Highway Commission v. Conrad, Mo., 310 S.W.2d 871, and Wabash Railroad Company v. City of Wellston, Mo., 276 S.W.2d 208. Both of these cases involved a true collateral attack *748 on the final order of the Public Service Commission and in each it was held that such collateral attack could not be maintained. These cases have no applicability to the case at bar. Here we are dealing with a proceeding initiated by the Public Service Commission to determine the present need for safety devices at an existing grade crossing. This is a direct proceeding to determine the present conditions of safety at the crossing and does not depend in any way on and does not detract from or in any way affect the prior order.
The action of the Public Service Commission in matters such as this is an exercise of the police power of the state in the interest of public safety. State ex rel. Wabash R. Co. v. Public Service Commission, Mo., 273 S.W.2d 334; State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission, 331 Mo. 438, 53 S.W. 2d 868; State ex rel. Rutledge v. Public Service Commission, 316 Mo. 233, 289 S. W. 785; and Chicago, Rock Island and Pacific Railroad Co. v. Public Service Commission, 315 Mo. 1108, 287 S.W. 617. Such power is a continuing power and its exercise in 1950 did not exhaust the power as to this crossing. It continued to be the duty of the Public Service Commission to exercise the police power of the state in the interest of public safety and the authority of the Public Service Commission to act in the present case is not conditioned on a finding of change in conditions subsequent to the prior order. The Public Service Commission does not exercise judicial power or authority, State ex rel. Rutledge v. Public Service Commission, 316 Mo. 233, 289 S.W. 785, and the doctrine of res adjudicata and the reasoning and philosophy underlying that doctrine has no applicability to the case at bar. For these reasons, we conclude that the Public Service Commission was well within its authority in the present case.
The Rock Island next contends that the order of the Public Service Commission is arbitrary and capricious because there is no substantial evidence to support the finding of a need for a flashing light signal and because the evidence does not justify the imposition of the entire cost of the improvement on the railroad. It contends that this resulted because the Public Service Commission failed and refused to follow and apply the criteria set forth in Section 389.640, supra, in apportioning the costs.
In answer to this argument, the Public Service Commission is content to say that these contentions were not presented to the trial court in the motion for new trial as required by Civil Rule 79.03, V.A.M.R., and therefore are not preserved for review. The trial court reviewed this order of the Public Service Commission "without the intervention of a jury" as specifically provided by Section 386.510, R.S.Mo. 1959, as amended, V.A. M.S. In an appeal of such a court tried case, Civil Rule 73.01 provides that the question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. These contentions of the Rock Island go to the sufficiency of the evidence to support the judgment below and, under this provision of Civil Rule 73.01, are properly before us for review.
A closer question is presented by the requirement of Section 386.500(2) R. S.Mo. 1959, V.A.M.S., that grounds not specifically set forth in an application for rehearing before the commission may not be asserted in any court upon review. State ex rel. Kansas City Transit, Inc. v. Public Service Commission, Mo., 406 S.W. 2d 5, and State ex rel. Doniphan Telephone Co. v. Public Service Commission, Mo.App., 377 S.W.2d 469. We have examined the application for rehearing and conclude that, although the applicable language is extremely general and imprecise, it is sufficient to preserve these contentions for our consideration.
As to the need for a flashing light signal, the evidence was clearly ample to support this finding. All of the witnesses except *749 the railroad engineer testified that the crossing was dangerous. The photographs in evidence graphically support this conclusion. This is the only road into a large area along the Gasconade River. There is no bridge across the river into this area. People having reason to go into or out of this area must use this crossing. There is no other choice. The order is clearly within the power of the Public Service Commission, State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission, 331 Mo. 438, 53 S.W.2d 868, and from a careful examination of all of the evidence, we cannot say that the determination of need for a flashing light signal is arbitrary and without reasonable basis in the evidence.
As to the apportionment of the entire cost of this improvement to the Rock Island, we have a more difficult question. Section 389.640, supra, requires the Public Service Commission to prescribe the proportion in which such expense shall be divided between the railroad and the state, county, or other public authority in interest. Prior to the last amendment of this statute, our courts had consistently held that this apportionment of costs did not amount to a proceeding to assess benefits and that the state under its police power could force the railroad to bear part of or all of the expense incident to alleviating the hazards to public safety created by the presence of the rail line and the conditions existing on the railroad right-of-way. See State ex rel. Wabash Railroad Co. v. Public Service Commission, Mo., 273 S.W.2d 334; State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission, 331 Mo. 438, 53 S.W.2d 868; State ex rel. and to the Use of Kansas City Southern R. Co. v. Public Service Commission, 325 Mo. 862, 30 S.W.2d 112; and Chicago, Rock Island & Pacific Railroad Co. v. Public Service Commission, 315 Mo. 1108, 287 S.W. 617. In 1963, the legislature (by Laws 1963, p. 501, Sec. 1) added the proviso at the end of this section as above quoted. This provides that in the absence of an agreement as to the division of costs the Public Service Commission shall apportion the cost among the parties according to the benefits accruing to each. In determining benefits, the Public Service Commission is directed to consider "all relevant factors" including but not limited to the volume, speed and type of vehicular and train traffic; savings to any party as a result of the project and advantages to either party from the elimination of delays and the reduction of hazard. Any cost in excess of total benefits is to be assessed against the party desiring to make or proposing the installation. No case has been cited to us and our own research has not found any which construes these new provisions.
The report and order of the commission makes no direct reference to Section 389.640, supra. Neither does it refer to the specific factors which that section requires it to consider in determining benefits. Rather, the commission concluded that assessing further costs to the county and road district would work an unreasonable hardship upon them; that "the railroad has full benefit and control of the road and crossing as far as train schedules and speed are concerned since passenger service has been discontinued"; and that the costs should be borne by the railroad. The financial abilities of interested parties constitute relevant factors to be considered by the commission in this connection but other factors must also be considered. It is apparent that the reduction of hazards, both as to the public and the railroad, was of prime importance in this case but the commission failed to mention consideration thereof (except that it found that the crossing was hazardous) in apportioning the entire costs to the railroad. We can only conclude that the commission did not consider the factors which Section 389.640, supra, specifically requires that it consider. A consideration of all relevant factors, including those which this statute specifically requires, might result in apportioning all of the costs to the railroad but this decision cannot be reached until the commission has *750 complied with the statute. We therefore conclude that, because of the failure of the commission to consider all relevant factors, including those specifically set out in the statute, its order is not authorized by law and is not supported by competent and substantial evidence upon the whole record. City of Joplin v. Industrial Commission of Missouri, Mo., 329 S.W.2d 687, 695, and State ex rel. Missouri Water Co. v. Public Service Commission, Mo., 308 S.W.2d 704, 720.
The judgment of the trial court is reversed and the cause remanded with directions that it be remanded to the Public Service Commission.
All concur.