STATE of Missouri ex rel. CITY OF ST. JOSEPH, Missouri, Respondent,

v.

PUBLIC SERVICE COMMISSION, State of Missouri, Appellant.

No. WD 37697.

Missouri Court of Appeals, Western District.

July 15, 1986.

Linda K. Malinowski, Asst. General Counsel Public Service Com'n of Mo., Jefferson City, for appellant.

John D. Boeh, Asst. City Atty., St. Joseph, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

CLARK, Chief Judge.

This is an appeal by the Missouri Public Service Commission from a judgment of the circuit court in Buchanan County which set aside the report and order of the Commission authorizing the applicant railroads to close the crossing of Florence Road in the City of St. Joseph at a point where the road intersected railroad tracks. The appeal contends, in effect, that the circuit court impermissibly substituted its judgment on questions of fact for that of the Commission, and that the Commission order was supported by competent and substantial evidence. We agree and therefore reverse the judgment and direct that the Commission report and order be reinstated as issued.

The geographical facts of the case are that Florence Road, a public street in southwest St. Joseph, runs from east to west and terminates in an industrial area at the banks of the Missouri River. Some distance east of this terminus, in an area which is partially residential and partially heavy manufacturing, Florence Road crosses two mainline railroad tracks and nine yard tracks. The tracks are used by the Burlington-Northern and the Santa Fe lines. To the north of Florence Road, Hickory Street and Oak Street run parallel to Florence and to the south, Alabama Street also runs east and west. With the exception of such deviation in travel to the north or to the south as is needed to reach these alternate routes, access to the west side of the railroad tracks is available by use of Hickory, Oak or Alabama and by Illinois Avenue, a private road which was shown by the evidence to be open for public traffic.

In the proceedings before the Commission, the railroads advocated closing Florence Road on the ground that the substantial number of tracks, the presence of mainline rail traffic moving two directions on dual tracks and the activity in the rail yard area, including the reduction in visibility by reason of standing box cars, presented a hazard to public safety which justified closing the crossing to motorists. The City of St. Joseph intervened and opposed the closing. The city's contentions focused on public convenience which, it argued, would be adversely affected. Particularly stressed was the delay in response time by fire and police equipment which would otherwise use Florence Road but, after the closure, would be forced to seek alternate routes. In its presentation to the Commission and on this appeal the city contends the closing of Florence Road is shown by competent and substantial evidence to have an adverse affect on public convenience and necessity thereby requiring that the road remain open.

■ On appeal from a decision by the circuit court in a cause ruled by the Public Service Commission, the appellate court reviews the decision of the Commission, not the judgment of the circuit court. *State ex rel. Public Water Supply District v. Public Service Commission*, 600 S.W.2d 147, 149 (Mo.App.1980). The role of the appellate court in reviewing a report and order by the Public Service Commission is to determine whether the report and order are lawful and reasonable and as to matters of reasonableness, the court may not substitute its judgment for that of the Commission if the latter is supported by substantial and competent evidence on the record as a whole. *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission*, 585 S.W.2d 41, 47 (Mo. banc 1979). The lawfulness of an order by the Commission is determined by whether it has the statutory power to act as it did and in this respect, the court need not defer to the Commission which has no authority to declare principles of law or equity. *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 217 (Mo.App. 1973); *Board of Public Works of Rolla v. Sho-Me Power Corp.*, 244 S.W.2d 55, 59 (Mo. banc 1951). In matters of reasonableness, however, the Commission order enjoys a presumption of validity which must prevail if supported by competent and substantial evidence. *State ex rel. Ashcroft v. Public Service Commission*, 674 S.W.2d 660, 662 (Mo.App.1984).

In reviewing a decision by the Public Service Commission, the court is obligated to determine, first whether the Commission order is lawful and, second whether it is reasonable. *State ex rel. Dyer v. Public Service Commission*, 341 S.W.2d 795, 802 (Mo.1960); *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961). The first inquiry, lawfulness, is directed toward the question of whether the Commission has the statutory power to act as it did. *State ex rel. Beaufort Transfer Co. v. Clark*, *supra*. In the present case, there appears to have been no challenge to the report and order on this ground, but we note for its relevance to the succeeding discussion the source of the Commission's authority over railroad crossings. That authority is found in § 389.640, RSMo.1978 which, in the first subsection, grants the Commission permit authority over the establishment of crossings initially. The second subsection is in part applicable to the abolishment of crossings, the relevant portion reading:

"The Commission shall have the exclusive power * * * to alter or abolish any such crossing, at grade or otherwise, of a railroad by a public road, highway or street whenever the Commission finds that public convenience and necessity will not be adversely affected and public safety will be promoted by so altering or abolishing such crossing * * *."

Within the limits of public convenience, necessity and safety, determined in an appropriate proceeding, the Commission acted lawfully in directing the closing of the Florence Road crossing.

The debate in the case centers on the second prong of the review, whether the report and order are reasonable. The authorities cited earlier define reasonableness as a result based on competent and substantial evidence. In *State ex rel. Rice v. Public Service Commission*, 220 S.W.2d 61, 64 (Mo. banc 1949), it is stated that substantial evidence is evidence which, if true, would have a probative force upon the issues. Evidence which is not credible is, of necessity, not substantial but issues of credibility are for the fact finder, not for the court. Particular evidence is substantial if the triers of fact believed it to be true. Also appropriate for citation is the statement in *State ex rel. Chicago, Rock Island & Pacific Railroad Co. v. Public Service Commission*, 312 S.W.2d 791, 796 (Mo. banc 1958) that the reviewing court is not to examine the record to determine what order it would have made in the case. The court is not to substitute its discretion for that legally vested in the Commission.

Under these precepts, we look to the evidence presented before the Commission to determine what evidence supports the report and order for the closing of the

Florence Road crossing and whether that evidence was competent and substantial.

■ The principal witnesses supporting a closure of the crossing were Leroy Meisel, a railroad safety specialist on the staff of the Commission and Charles C. Lofton, trainmaster for Burlington-Northern. Both witnesses testified that the crossing was unusually dangerous. According to Meisel, Florence is the only road in the state which crosses a railyard with as many as nine tracks. The only warning protection at the crossing is a set of flashing lights which are activated frequently due to the high numbers of train movements. On this account, Meisel said the warnings have lost credibility and the motoring public ignores the warnings. Lofton described his own observations of motorists who pay no attention to the lights and cross the tracks even though a train is approaching. The cost of installing gates to block traffic when a train nears was estimated at $250,000 to $300,000, but was deemed uneconomical because of the low volume of automobile traffic.

A particular hazard at the Florence Road crossing is the combination of through line trains and local car movement in the railyards. Lofton testified that the combination of slow movement of trains during switching operations with the less frequent passage of through trains at higher speeds causes a motorist to assume, if he observes the slower train activity first, that all trains using the tracks will be traveling slowly. Also, with through trains moving on the two mainline tracks, there is increased danger that a motorist will wait the passage of one train but will fail to see a second train going in the opposite direction. Finally, Lofton noted the obstruction to visibility caused by freight cars being held on yard tracks near the crossing. Often most of the nine yard tracks are occupied by standing box cars and, on this account, motorists encounter difficulty seeing trains on the other tracks.

The evidence summarized above was competent and substantial to support the conclusion reached by the Commission that closing the Florence Road crossing would promote public safety. Indeed, the opponents to the closing concede as much. They argue, however, that opposing evidence showed an adverse affect on public convenience and necessity and that competent and substantial evidence was not adduced to the contrary. The evidence on which the opponents rely came primarily from the police and fire officials of St. Joseph.

The substance of the officials' testimony was that time is of the essence when emergency equipment responds to a fire, a chemical spill, an injury accident or to the report of a crime. Access to the area west of the railroad tracks is often obtained by use of Florence Road and although there are the other routes of Hickory, Oak, Alabama or Illinois Avenue, the most direct route may be across Florence or the other routes may be blocked. Evidence was also given that the industrial area west of the tracks has a high potential for accidents requiring emergency equipment. There is no police or fire station in the area south of Hickory Street and west of the tracks and thus vehicles must cross the tracks when an emergency call comes from the district. On account of the use made of the Florence Road crossing for emergency vehicles and, to some extent, by private persons, and absent any evidence controverting these claims, the opponents assert that public convenience and necessity was, contrary to the Commission's report and order, shown by competent and substantial evidence to suffer adversely by the proposed closing.

Necessarily, the closing of any road which enjoys some public use will cause inconvenience to some extent just as the closing of a grade crossing over actively used railroad tracks will always promote safety by eliminating the prospect of an accident. Therefore, the issue is one of a balancing test in which competing interests of public safety and public convenience must be weighed.

The opponents' argument that the Commission order is unreasonable tacitly assumes their burden to overturn the order

on judicial review is met if they point to a record containing competent and substantial proof of an adverse effect on public convenience and necessity by closure of the crossing. That premise does not warrant a conclusion that the Commission order was arbitrary and unreasonable, however, because it overlooks two factors. The first is the entitlement of the Commission to consider the potential for use of alternate rail crossings nearby and the second is the obligation of the Commission to reach an ultimate decision under which the various priorities of safety, convenience and necessity are not necessarily entitled to equal weight.

As to the first factor, the evidence in this record demonstrates that closing Florence Road will not bar private and emergency vehicles from access to the area west of the rail tracks. Those seeking to cross must merely take one of several other cross streets. Whether a delay may occur in any particular instance where an emergency is involved cannot be predicted except by speculation on the location of the emergency, the initial route chosen by the emergency vehicle operator, the point of departure and the prospect that one or more of the available crossings may be blocked by railroad traffic. Indeed, the evidence showed that Florence Road itself was blocked approximately thirty percent of the time by standing or moving freight cars. Having in view the premise that closing any street-rail crossing will always to some extent cause inconvenience, it was for the Commission to weigh and consider the interest of public convenience and necessity in keeping Florence Road open as contrasted with routing traffic to other available crossings in the promotion of public safety by closing a hazardous crossing.

The second factor is interrelated to the first and involves the authority vested in the Commission to decide whether, in a particular case, the interests of public safety outweigh any detrimental inconvenience to the public. It has long been the policy of the Commission to regard public safety as weighing more heavily in the balancing of the two interests and to place public safety above that of public convenience. *State ex rel. St. Louis-San Francisco Railway Co. v. Public Service Commission,* 331 Mo. 438, 53 S.W.2d 868 (1932) (Commission report quoted at 870). In the case of *In Re City of Monett,* 24 Mo.P.S.C. (N.S.) 218, 223 (1981) it is stated: "Generally speaking, the Commission places a consideration of public safety above that of public convenience. The Commission should not exercise its discretion in favor of creating a crossing with a high potential for danger to the public, in order to eliminate inconvenience to the public." Obviously, the policy so stated applies with equal force whether the issue be opening a new crossing or closing an existing crossing if the crossing in question is determined to present unusual or exceptional danger to the public.

In the present case, the number of rail tracks unique in the state, the movement of through trains and yard traffic and the other facts discussed amply support the conclusion that this crossing was unusually dangerous. It is true, as the opponents point out, that no serious accidents had been reported. To determine that a crossing is exceptionally hazardous, however, it is not necessary to await the occurrence of a great accident. *State ex rel. Wabash Railway Co. v. Public Service Commission,* 306 Mo. 149, 267 S.W. 102, 107 (1924). The Commission here was entitled in the exercise of its statutory function to give greater weight to the interests of public safety and to decide the question in favor of closure despite evidence that closing Florence Road would adversely affect to some extent the public convenience and necessity otherwise served by maintaining the grade crossing.

The report and order by the Commission was supported by competent and substantial evidence, it was lawful and reasonable and is entitled to affirmance. The judgment of the circuit court is reversed and the decision by the Commission ordering closure of Florence Road at the crossing of the road and the tracks of the Burlington-Northern Railroad and the Santa Fe Rail-

road in St. Joseph, Buchanan County, Missouri is affirmed.

All concur.