STATE of Missouri ex rel. MISSOURI PUBLIC SERVICE COMPANY, Appellant,

v.

A. Robert PIERCE, Jr., Chairman, Commissioners Fain, Sprague, Jones and Mulvaney, As Members of and Constituting the Public Service Commission of Missouri, Respondents.

No. WD 30710.

Missouri Court of Appeals, Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1980.

Gary J. Brouillette, Charles C. Kirley, Jackson, Dillard, Brouillette & Farchmin, Kansas City, for appellant.

Paul W. Phillips, Gen. Counsel, James S. Haines, Jr., Deputy Gen. Counsel, Randall B. Palmer, Certified Legal Counsel, Jefferson City, for respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The Missouri Public Service Company [MPS] appeals from the judgment to affirm the order of the Public Service Commission [PSC] to authorize MPS to file tariffs for permanent rate increases in amounts less than proposed by the utility.

In the interim of the review process, MPS filed successive proposals for tariffs calculated to produce additional revenues for utility services. These tariffs were approved and are now in effect. PSC contends that the subsequent rate increases supersede the subject matter on appeal and render review moot. MPS contends that review presents a ground of pervasive public interest, inevitably to recur, and so an exception to the doctrine of mootness.

The aspect of decision to which MPS attributes an inevitably-recurrent character is the method used by staff witnesses to determine the cost of capital—particularly, the cost of equity capital as an element of a utility rate structure. The primary staff witness for this evidence, Chief of Economic Research Ellingson, gave opinion that a 14.5% rate of return on equity would attract equity capital to MPS and at the same time maintain the financial integrity of the utility. In this assessment, witness Ellingson used a formula for risk analysis which, among other components, pooled industrial firms with utilities. It was his assumption that an investor does not ordinarily perceive a difference. MPS cavils at the formula for want of a distinction of the greater risk attendant to an investment in a utility—especially in view of an MPS history of decreased return on equity—and for the disregard of such conventional facts of analysis as discounted cash flow, comparable earnings, and others. MPS contends that even more, the Ellingson formula postulates variables unsupported by empirical data as a basis for opinion.

The utility asserts that the proper method to derive a return on common equity was as described by MPS witness Baker. That method assumes, among other premises, that an investor measures future growth by past growth and other economic indicia. The financial profile of MPS which emerged was of an enterprise with a depressed market-to-book ratio, below industry norms, and still in a downward trend. The economic and fiscal data made MPS out as an investment more risky than the average utility. The equation of witness Baker was that a return on common equity

within a range of 14¾ to 15¾ was necessary to attract investors. The utility supported that assessment by evidence of actual stock issues during the course of the hearings which, by utility testimony, demonstrated investor demand for a 15.16% to 16.2% return on equity to attract risk capital to the enterprise.

The order of the PSC authorized a return on equity of 14.0%, a determination more compatible with the staff evidence than the opinion of MPS witness Baker.

The points on appeal contend that the Commission decision was not on substantial and competent evidence on the record nor supported by the concise statement of findings of fact required under § 536.090. That grievance reduces to complaint that the 14% rate of return determined by the PSC was contradicted by the demand of the investment public for a 15.7% return demonstrated as a fact by the sale of stock during the course of hearing. In a word, MPS contends that the PSC simply ignored that significant evidence. The findings of fact belie the contention. The report and order of the PSC mentions the recent MPS stock issues, as well as the inference from that evidence that the prospect of a return on equity of at least 15.0% was necessary to induce investment. The report and order took note of other MPS evidence, however, that the low kilowatt output factor which underlay the unstable earnings by the utility [and hence the investor view of MPS as an abnormal risk] was in continuous improvement. The earnings stability—and hence a diminished investment risk—augured by the improvement was stated as the basis for the 14.0% rate of return determination. PSC was not obliged to adopt the utility evidence as to the cost of money and the rate of return.

These contentions are not the sort to avoid mootness. They import no unusual public interest nor declaration of new principle. They are likely to recur in any administrative utility rate proceeding but are governed by settled principles of judicial review. *State ex rel. Fee Fee Trunk Sew-*

er, Inc. v. Public Service Commission, 550 S.W.2d 945, 946[1, 2] (Mo.App. 1977).

In response to the PSC motion to dismiss the appeal as moot, MPS refashions the ground for review as a redress of "the method by which the Commission arrived at its decision seemingly apart from the competent and substantial evidence." Thus, the importance to the public for scrutiny of an administrative method which determines the cost of equity capital by expert testimony "unrealistic and unprobative" is posed to justify judicial review—although what we may say cannot affect a rate decision already superseded. MPS has concern that unless we accept review, "it is possible that the Commission will fail to properly consider the evidence or consider improper evidence" in future determinations of the cost of equity capital. The request, then, is for a guideline.

No doubt the rate of return on equity, as numerous other determinations which bear on a utility rate structure, is one bound to recur in such a proceeding. It may be also, as MPS suggests, that the cost of capital overrides all other factors in such a determination, and so most merits the attention of a court as to the regularity of decision process. [See, 1 Priest, Principles of Public Utility Regulation, p. 199 (1969).] The real complaint [reclothed in terms of method of decision], however, remains that the PSC neglected the MPS evidence of actual sales and otherwise accepted the baseless opinion of an expert.[1]

The determination of the evidence by the PSC is favored by a strong presumption of validity. Smith v. Public Service Commission, 351 S.W.2d 768, 772[4] (Mo. 1961). That presumption extends to the determinations based on expert opinion. State ex rel. City of West Plains v. Public Service Commission, 310 S.W.2d 925, 933[10] (Mo.banc 1958). A court of review may determine only whether the order is reasonable and lawful. State ex rel. Alton Transportation Co. v. Public Service Commission, 330 Mo. 1, 49 S.W.2d 614, 617[104] (1932); § 386.430. These are all settled principles as to the judicial review of PSC proceedings. The contention that the data of actual cost of capital must always weigh decisively against an hypothetical ideal return on equity to insure the integrity of the administrative determination, is a notion also dispelled. [Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1945)]:

> It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.

State ex rel. Missouri Water Co. v. Public Service Commission, 308 S.W.2d 704, 718[7] (Mo. 1957). The considerations towards a fair rate structure and rate of return are too variable to be concluded by any single historical event or any single formula. This, also, is a settled principle of utility law. 1 Priest, Principles of Public Utility Regulation, pp. 208, 215 (1969).

The points on appeal present no issue not already determined by a fixed principle of law. No matter of public concern or importance compels our review. The subject

---

1. MPS "Suggestions in Opposition to Motion to Dismiss for Mootness":

Page 1: "[T]he Company simply seeks to have this Court review the manner in which it contends the Commission ignored the competent and substantial evidence concerning the cost of equity capital in arriving at its decision in this case."

Page 2: "Such a statement would greatly benefit all parties concerned by clarifying the nature and degree of evidence needed to support a particular position."

Page 4: "The Court's failure to do so will insulate the Commission from review concerning its methods of evaluating evidence. Furthermore, the failure of the Court to decide on the issues raised herein will allow parties on both sides of future rate controversies to continue to bolster their arguments by whatever theoretical, unproven methods their 'experts' can dream up, and the Commission will be free to rely on them."

Page 5: "In each of these cases, it is possible that the Commission will fail to properly consider the evidence or consider improper evidence."

matter of appeal has been superseded by new rate structures made permanent. Our decision can offer no relief, but would be merely nonjusticiable.

The appeal is dismissed.

All concur.