In the Matter of UNION ELECTRIC COMPANY, d/b/a Ameren Missouri's Tariff to Increase its Annual Revenues for Electric Service

Office of Public Counsel, AARP, Missouri Industrial Energy Consumers, and Consumers Council of Missouri, Appellants,

v.

Public Service Commission of the State of Missouri, et al., Respondents.

Nos. WD 75980, WD 76082, WD 76076, WD 76080.

Missouri Court of Appeals, Western District.

Oct. 15, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 2013.

Application for Transfer Denied Feb. 4, 2014.

James B. Lowery, Columbia, MO, Thomas M. Byrne, St. Louis, MO, for Respondent Union Electric Company d/b/a Ameren Missouri.

Edward F. Downey, Carole L. Iles, Jefferson City, MO, Diana Vuylsteke, Brent Roam, St. Louis, MO, for Appellant Missouri Industrial Energy Consumers.

John B. Coffman, St. Louis, MO, for Appellants Consumers Council of Missouri and AARP.

Lewis R. Mills, Jr., Jefferson City, MO, for Appellant Office of the Public Counsel.

Jennifer Heintz, Joshua Harden, Jefferson City, MO, for Respondent Public Service Commission.

Before Division III: LISA WHITE HARDWICK, Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

In this appeal, Missouri Industrial Energy Consumers ("MIEC"),[1] Consumers

---

1. MIEC is a Missouri corporation, and its members are Anheuser–Busch Companies, Inc., BioKyowa, Inc., The Boeing Company, Covidien, Doe Run, Explorer Pipeline, General Motors Corporation, GKN Aerospace, Hussmann Corporation, JW Aluminum, MEMC Electronic Materials, Monsanto, Procter & Gamble Company, Nestlé Purina PetCare, Noranda Aluminum, and Saint Gobain.

Council of Missouri ("CCM"),[2] AARP,[3] and the Office of Public Counsel ("OPC"),[4] collectively "Consumers," challenge the Public Service Commission's ("PSC") Report and Order issued December 12, 2012 ("2012 Report and Order"), that approved a rate increase for Union Electric Company, d/b/a Ameren Missouri ("Ameren Missouri"). Specifically, Consumers appeal the decision of the PSC allowing Ameren Missouri to use a Fuel and Purchased Power Adjustment Clause ("FAC") to automatically recover from customers certain MISO Schedule 26 and 26A transmission charges. We find that the PSC was within its authority in permitting Ameren Missouri to use an FAC to pass on the charges at issue, that it acted reasonably in permitting those costs to be passed on to its customers, and that the record supported the determinations of the PSC. Accordingly, the PSC's 2012 Report and Order was lawful and reasonable, and we affirm.

**Factual and Procedural Background**

The PSC is a state agency established by the Missouri legislature to regulate public utilities operating within the state. *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n,* 344 S.W.3d 178, 186 (Mo. banc 2011). Ameren Missouri is a public utility within the meaning of section 386.020(43),[5] and an electrical corporation within the meaning of section 386.020(15), subject to the jurisdiction, control, and regulation of the PSC. Ameren Missouri provides retail electric service to approximately 1.2 million retail electric customers in Missouri, including those in the St. Louis metropolitan area.

Ameren Missouri initiated this case, No. ER–2012–0166, on February 3, 2012, by filing with the PSC proposed tariff sheets designed to implement a general rate increase for electrical service, which would increase Ameren Missouri's annual electric revenues by approximately $375.6 million. By order issued pursuant to section 393.150, on February 6, 2012, the PSC suspended Ameren Missouri's general rate increase tariff until January 2, 2013; directed that notice of Ameren Missouri's tariff filing be provided to interested parties and the public; and set the deadline for submission of applications to intervene. Among the parties allowed to intervene were MIEC, CCM, and AARP.

In July and August 2012, the PSC conducted twelve local public hearings at various sites around Ameren Missouri's service area. An evidentiary hearing was held September 27, 2012, through October 11, 2012. The PSC issued its 2012 Report and Order on December 12, 2012, effective December 22, 2012, rejecting the tariff sheets filed by Ameren Missouri and authorizing Ameren Missouri to file a tariff sufficient to cover an increase in its revenues of approximately $260.2 million.

In addition to the PSC's approval of a general rate increase, the PSC also approved the inclusion in the FAC of certain

---

MIEC members are large industrial customers of Union Electric Company, d/b/a Ameren Missouri.

**2.** Consumers Council of Missouri is a non-governmental, non-partisan, non-profit organization.

**3.** AARP is a section 502(c)(4) non-profit social welfare organization. In 1999, the "American Association of Retired Persons" changed its name to "AARP."

**4.** The Office of Public Counsel is an agency of the State of Missouri and, pursuant to statutory authority, represents the public in all proceedings before the PSC and in any related appeals. *See* §§ 386.700 & 386.710.

**5.** All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

expenditures that Ameren Missouri remits to the Midcontinent Independent System Operator, Inc. ("MISO").[6] MISO is the Federal Energy Regulatory Commission ("FERC")-approved regional transmission organization ("RTO"), in which Ameren Missouri participates, with the PSC's approval.

Through its membership in MISO, Ameren Missouri has access to a transparent, wholesale energy market where it can acquire power to serve its load and sell power off-system. Network service enables Ameren Missouri to transmit energy acquired from the MISO market, including that injected by Ameren Missouri's own generators, to its customers. MISO charges Ameren Missouri for the use of its service pursuant to a FERC-approved tariff. Although the charges exist as distinct schedules, they must be paid by Ameren Missouri to use the system to serve load.

The PSC has permitted certain MISO transmission service charges to be included in Factor CPP (Costs of Purchased Power) in Ameren Missouri's FAC since its inception:

CPP = Costs of purchased power reflected in FERC Account Numbers 555, 565, and 575, excluding MISO administrative fees arising under MISO Schedules 10, 16, 17, and 24, and excluding capacity charges for contracts with terms in excess of one (1) year, incurred to support sales to all Missouri retail customers and Off–System Sales allocated to Missouri retail electric operations. Also included in factor "CPP" are insurance premiums in FERC account Number 924 for replacement power insurance to the extent those

premiums are not reflected in base rates. Changes in replacement power insurance premiums from the level reflected in base rates shall increase or decrease purchased power costs. Additionally, costs of purchased power will be reduced by expected replacement power insurance recoveries qualifying as assets under Generally Accepted Accounting Principles.

LF vol. 13, 6233 (excerpt from approved compliance tariff sheets). Consumers challenge the propriety of allowing certain MISO Schedule 26 and 26A charges to flow through the FAC.

As explained by MIEC witness James Dauphinais, MISO Schedule 26 charges are FERC Account 565[7] (transmission of electricity by others) expenses incurred by Ameren Missouri under MISO Tariff Schedule 26 (network upgrade charge from transmission expansion plan) for the: (i) long-term transmission service it takes under MISO Tariff Schedule 9 (network integration transmission service) to serve its network load (including its retail load); and (ii) short-term transmission services it takes under MISO Tariff Schedule 7 (firm point-to-point transmission service) and MISO Tariff Schedule 8 (non-firm point-to-point transmission service) to make off-system sales on behalf of its retail customers to entities not located within MISO. Schedule 26 is used by MISO to recover the cost of Baseline Reliability Projects ("BRP") that are included in the MISO Transmission Expansion Plan ("MTEP"). Revenues collected by MISO under Schedule 26 are distributed to the transmission owners who have constructed the BRPs.

---

6. Effective April 26, 2013, MISO changed its name from "Midwest Independent Transmission System Operator, Inc." to "Midcontinent Independent System Operator, Inc."

7. Electric public utilities within FERC jurisdiction are required to maintain their books and records in accordance with FERC's Uniform System of Accounts. *See* 18 USC §§ 101–935. Electrical corporations within the PSC's jurisdiction are directed to use the Uniform System of Accounts prescribed by FERC. 4 CSR 240–20.030.

MISO Schedule 26A charges are FERC Account 565 expenses incurred by Ameren Missouri under MISO Tariff Schedule 26A (multi-value project usage rate), for the: (i) long-term transmission service it takes under MISO Tariff Schedule 9 to serve its network load (including its retail load); and (ii) short-term transmission services it takes under MISO Tariff Schedule 7 and MISO Tariff Schedule 8 to make off-system sales on behalf of its retail customers to entities not located within MISO. Schedule 26A is used by MISO to recover the cost of Multi–Value Transmission Projects ("MVPs") that are included in the MTEP. Revenues collected by MISO are then distributed to the transmission owners constructing the MVPs as MISO Schedule 26A revenues.

Consumers agree that MISO transmission charges associated with the short-term transmission service necessary to support power purchases or off-system sales are incremental costs directly related to Ameren Missouri's fuel and purchased power cost and are properly recoverable through the FAC. However, Consumers contend that MISO transmission charges associated with the long-term transmission service taken for Ameren Missouri's network load are not incremental costs incurred to enable power purchases or off-system sales and, therefore, should not be recoverable through the FAC but only recoverable in base rates.

In the 2012 Report and Order, the PSC concluded that there was no legal or public policy impediment to allowing Ameren Missouri to recover MISO transmission charges by passing them through the FAC. The PSC noted that under the filed-rate doctrine,[8] Ameren Missouri must be able to recover the MISO transmission charges in some manner. The PSC found that the continuation of the current practice of passing those costs through the FAC was the most logical manner of doing so, in that those costs meet the PSC's past standards for inclusion in the FAC: they are significant in amount; they are volatile—rising rapidly and uncertain in amount; and they are largely beyond Ameren Missouri's control. The PSC thus concluded that Ameren Missouri may continue to pass its MISO transmission charges through its FAC.

Consumers each filed timely applications for rehearing, which were denied. Thereafter, Ameren Missouri, MIEC, CCM and AARP, and OPC each filed a separate notice of appeal. The appeals were ordered consolidated.[9] Further details regarding the relevant disputed issues will be presented as applicable in the analysis sections following.

## Standard of Review

█ "Under section 386.510, the appellate standard of review of a PSC order is two-pronged: first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable." *Praxair*, 344 S.W.3d at 184 (internal quotation omitted). The PSC's order is prima facie lawful and reasonable. § 386.270. The burden of proof is upon the party at-

8. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986).

9. Ameren Missouri's motion to dismiss its appeal pursuant to Rule 84.09 was sustained by this court on July 30, 2013. Hence, MIEC, CCM, AARP, and OPC are the appellants, and the PSC and Ameren Missouri are the respon-

dents in this appeal. Because of all of the separate appeals and cross-appeals that were consolidated, there is no uniform order of the points on appeal. Thus, for our purposes, we will refer to the three points that have been raised on appeal as: Point I—Purchased Power Issue; Point II—Transportation versus Transmission Issue; and, Point III—Construction Work in Progress ("CWIP") Issue.

tacking the order to show by clear and satisfactory evidence that the order or determination of the PSC is unlawful or unreasonable. § 386.430.

■ "The lawfulness of an order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo." *Praxair*, 344 S.W.3d at 184 (internal quotation omitted).

■ "The decision of the [PSC] is reasonable where the order is supported by substantial, competent evidence on the whole record[,] the decision is not arbitrary or capricious[,] or where the [PSC] has not abused its discretion." *Id.* (internal quotation omitted). " 'Substantial evidence' is competent evidence which, if true, has a probative force on the issues." *State ex rel. Midwest Gas Users' Ass'n v. Pub. Serv. Comm'n,* 976 S.W.2d 470, 476 (Mo. App.W.D.1998).

■ The PSC is required to make and file written findings of fact "upon all matters concerning which evidence shall have been introduced before it which in its judgment have bearing on the value of the property" of the electrical corporation affected. § 393.230.2. "The [PSC's] factual findings are presumptively correct, and if substantial evidence supports either of two conflicting factual conclusions, [we are] bound by the findings of the administrative tribunal." *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n,* 120 S.W.3d 732, 735 (Mo. banc 2003) (internal quotation omitted).

### Analysis

*Consumers' Point I—Purchased Power Issue*

In their first point on appeal, Consumers assert that the PSC's decision allowing Ameren Missouri to surcharge its customers under an FAC was unlawful and unreasonable because: (1) it is error for the PSC to treat all of Ameren Missouri's acquired power from MISO as "purchased power" where Ameren Missouri self-generates and sells power to MISO which it then purchases from MISO before the power is transmitted to Ameren Missouri's ratepayers; and (2) sections 386.420 and 536.090 require the PSC to provide factual findings supporting its decision, and the PSC did not expressly find that the subject transmission charges were for the transmission of purchased power versus self-generated power.

As a threshold issue, we must address the PSC's contention that Consumers failed to preserve these "purchased power" issues for appeal. The PSC argues that Consumers should be barred from arguing the purchased power issues because those issues were never presented to the PSC for consideration below. We agree.

■ Section 386.500 governs rehearing before the PSC. Section 2 of the statute requires that a rehearing application set forth specifically the ground or grounds on which the applicant considers the order or decision to be unlawful, unjust, or unreasonable. *Friendship Vill. of S. Cnty. v. Pub. Serv. Comm'n,* 907 S.W.2d 339, 347 (Mo.App.W.D.1995). Section 386.500.2 provides:

> No cause or action arising out of any order or decision of the commission shall accrue in any court to any corporation or the public counsel or person or public utility unless that party shall have made, before the effective date of such order or decision, application to the commission for a rehearing. Such application shall set forth specifically the ground or grounds on which the applicant considers said order or decision to be unlawful, unjust or unreasonable. The applicant shall not in any court urge or rely on any ground not so set forth in its application for rehearing.

Any ground omitted from the rehearing application is waived. *State ex rel. Office of Pub. Counsel v. Pub. Serv. Comm'n,* 236 S.W.3d 632, 636 (Mo. banc 2007).

 None of Consumers' presently argued *purchased power* issues were raised below with the PSC. Instead, the arguments raised by Consumers with the PSC, including each of their respective applications for rehearing, were focused on the unlawfulness and unreasonableness of the *transmission costs* included in the FAC. For example, *inter alia,* Consumers principally argued below that the *transmission costs* were unlawful flow-through charges in a FAC because the charges were not "transportation" costs (*see* discussion of Point II) or constituted unlawful construction work in progress ("CWIP") charges (*see* discussion of Point III). Consumers also raised other *transmission costs* issues below that are not argued on appeal and thus abandoned; however, at no time did Consumers raise the *purchased power* issues below before the PSC that they now assert in Point I of their appeal. Thus, those issues have not been properly preserved, and we will not consider them. § 386.500.2.

Point I is denied.

### Consumers' Point II—Transportation versus Transmission Issue

 In their second point on appeal, Consumers contend that the PSC erred in allowing Ameren Missouri to surcharge the MISO electricity transmission charges under an FAC, arguing that such decision is illegal and unreasonable under section 386.510. Specifically, Consumers assert

that because the surcharge allowed under section 386.266.1 is only for "prudently incurred fuel and purchased-power costs, including transportation," and electricity is not "transported" but is "transmitted," transmission charges are ineligible for inclusion in an FAC.[10]

Our review of the propriety of the PSC's decision is guided by the principle that:

> All rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and shall be prima facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie lawful and reasonable until found otherwise in a suit brought for that purpose pursuant to the provisions of this chapter.

§ 386.270. In considering Consumers' challenge to the PSC's approval of Ameren Missouri's right to use the FAC to charge its customers these MISO transmission costs, we start from the premise that the charges are lawful and reasonable. The burden of proof is on Consumers to prove otherwise by clear and satisfactory evidence. § 386.430.

 Consumers argue that the statute is ambiguous and suggest that we invoke the principles of statutory construction to determine the meaning of "transportation." The PSC maintains that the statute is not ambiguous, and the plain meaning of "transportation" includes "transmission." In its 2012 Report and Order, the PSC noted that Staff advocated limiting the meaning of "transportation" in section 386.266.1 to the transportation of fuel, such

---

**10.** Consumers also argue that the legislature could not have intended that the MISO transmission charges at issue be recoverable through the FAC because these types of charges did not exist when section 386.266 was passed in 2005. By its language, the statute does not impose such a restriction.

The statute does not expressly describe or limit the charges composing "fuel and purchased power costs" recoverable through an FAC mechanism, except that such charges be "prudently incurred"; therefore, the MISO transmission charges are not excluded.

as coal (example: the cost of delivering coal to a power plant by rail). Staff argued that transmission of electricity over electric lines is not the transportation of electricity within the meaning of the statute, and therefore, transmission costs cannot properly be flowed through the FAC. The PSC rejected Staff's argument, noting that the phrase "including transportation" modifies both "fuel" and "purchased power" costs, and since there is no way to transport electricity in the form of purchased power except by transmission over electric lines, "the statute that allows electric utilities to include transportation costs as part of purchased power costs must have been intended to allow transmission costs to be included within a[n] [FAC]."

■■■ The threshold question under this point is whether the meaning of "transportation" as used in section 386.266.1 includes "transmission." When there is ambiguity as to the meaning of a statute, "the interpretation and construction of a statute by an agency charged with its administration is entitled to great weight"; nevertheless, we exercise our independent judgment and will correct erroneous interpretations of law. *State ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n*, 165 S.W.3d 160, 164 (Mo. banc 2005) (internal quotation omitted). "Statutory construction is a matter of law." *State ex rel. Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 331 S.W.3d 677, 683 (Mo.App. W.D.2011). Our role in construing statutes is to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. *State ex rel. MoGas Pipeline, LLC v. Mo. Pub. Serv. Comm'n*, 366 S.W.3d 493, 498 (Mo. banc 2012). In considering whether the word "transportation" as used in section 386.266.1 includes "transmission," we note that the word "transportation" is not defined in chapter 386. Accordingly, we begin with the well established principle that in the absence of a statutory definition, we give statutory words and phrases their plain and ordinary meaning as derived from the dictionary. *Id.*

To "transport" means "to transfer or convey from one person or place to another." Webster's Third New International Dictionary Unabridged 2430 (1993). To "transmit" means "to cause to go or to be conveyed to another person or place." *Id.* at 2429. Both terms are synonyms of "carry." *Id.* at 343. Likewise, in Black's Law Dictionary 1537 (8th ed.2004), to "transport" means "[t]o carry or convey (a thing) from one place to another," and to "transmit" means "[t]o send or transfer (a thing) from one person or place to another." The plain and ordinary meaning of both terms is conveyance from one place to another. These definitions support a finding that the term "transportation" in the context of section 386.266.1 includes "transmission."

"A court also may consider other legislative or judicial meanings of a term." *Mo. Dep't of Soc. Servs. v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 277 (Mo. banc 2001). Our legislature has used "transportation" in connection with electricity. Section 393.297.3 refers to "*electricity* and gas ... *transported* over rights-of-way and utility easements." (Emphasis added.) Missouri courts have also used "transportation" in connection with electricity. Our Supreme Court, in referring to the "nature of electricity," has stated: "It cannot safely be *transported by* a customer, and must be used by the customer at the time of purchase." *Kansas City Power & Light Co. v. Dir. of Revenue*, 83 S.W.3d 548, 553 (Mo. banc 2002) (emphasis added). Missouri courts have also referred to "transporting electricity": "That equipment, which does not generate electricity but *transports* it. . . ." *Loyd v. Ozark Elec. Co-op., Inc.*, 4 S.W.3d 579, 585 (Mo.App.S.D. 1999) (emphasis added), *overruled on other*

*grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 226 (Mo. banc 2003). The Eighth Circuit Court of Appeals has referred to power cooperatives as being responsible for "transporting electricity." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.,* 838 F.2d 268, 270, 271 (8th Cir.1988). The Missouri Supreme Court has also recognized that electric utilities "deliver[ ] electricity to their customers" in three stages: production, transmission, and distribution.[11] *Utilicorp United, Inc. v. Dir. of Revenue,* 75 S.W.3d 725, 726 (Mo. banc 2001). "Transmission involves the transfer of electricity from generating sources to local distribution systems." *Id.* Similar to the definitions of "transport" and "transmit," to "transfer" means "[t]o convey or remove from one place ... to another." Black's Law Dictionary 1536 (8th ed.2004).

We conclude that the legislature intended the word "transportation" in section 386.266.1 to encompass "transmission." Accordingly, the PSC did not err in so construing section 386.266.1. As the PSC points out, "there is no way to transport electricity, in the form of purchased-power, except by transmission over electric lines." Section 386.266.1 grants the PSC statutory authority to authorize an electrical corporation to surcharge customers for purchased power costs, including the costs of transmission of that purchased power, through an FAC:

> [A]ny electrical corporation may make an application to the commission to approve rate schedules authorizing an interim energy charge, or periodic rate adjustments outside of general rate proceedings to reflect increases and decreases in its prudently incurred fuel and purchased-power costs, including

transportation. The commission may, in accordance with existing law, include in such rate schedules features designed to provide the electrical corporation with incentives to improve the efficiency and cost-effectiveness of its fuel and purchased-power procurement activities.

The PSC's order allowing Ameren Missouri to surcharge the MISO electricity transmission charges under an FAC was lawful.

■■■ We further find that the PSC's order was reasonable. The PSC had before it the testimony of Jaime Haro, Ameren Missouri's director of asset management and trading, that Ameren Missouri purchases and settles with the MISO for 100% of its load and sells 100% of its generation into the MISO. Network service enables Ameren Missouri to transmit energy acquired from the MISO market, including that injected by Ameren Missouri's own generators, to Ameren Missouri's customers. That service is governed by the MISO tariff. Ameren Missouri is required to pay the MISO transmission charges in order to participate in the MISO market. Accordingly, we find that the PSC's order is supported by substantial, competent evidence on the whole record, is not arbitrary or capricious, and is not an abuse of the PSC's discretion.

Point II is denied.

*Point III—CWIP Issue*

■■■ In their third point on appeal, Consumers argue that even if MISO transmission charges are recoverable in the FAC as "transportation" charges, a portion of the MISO transmission charges are not recoverable in the FAC because they

---

11. Electricity is a physical product—the flow of electrons; it may not be visible, but it can be turned on and off and can be measured and marketed. FERC, *Energy Primer: A Handbook of Energy Market Basics,* 37 (July 2012), retrieved from http://www.ferc.gov/market-oversight/guide/energy-primer.pdf.

involve construction projects that are in progress. According to Consumers, construction work in progress, or "CWIP," can never be recovered by a utility as a part of a rate (whether in a FAC or as a part of a base rate) until the project is complete and online.

 Consumers' argument ignores the PSC's conclusion in the 2012 Report and Order that the MISO transmission charges incurred by Ameren Missouri were appropriately considered as a single charge for transmission services. The PSC found that "[w]hen Ameren Missouri pays the transmission charges [to MISO] it is in the same position as an Ameren Missouri customer who pays their electric bill." Thus, the PSC saw no need to dissect, or deconstruct, the MISO transmission charges incurred by Ameren Missouri into component allocations. Consumers advance no argument suggesting that the PSC's determination in this regard is either unlawful or unreasonable. We are, likewise, aware of no authority that requires an FAC prudence review to look behind the amount paid by a utility to acquire purchased power [12] or for "transportation" to determine whether that amount includes costs incurred by the "seller" that could not have been passed through the FAC had they been incurred directly by the utility. "An appellant has an obligation to cite appropriate and available precedent if he expects to prevail, and, if no authority is available to cite, he should explain the reason for the absence of citations." *M.H. v. Garcia*, 385 S.W.3d 489, 490 (Mo.App.W.D.2012) (internal quotation omitted). "When an appellant fails to cite relevant law and explain how it applies to the applicable facts, we deem the point abandoned." *Id.* (internal quotation omitted).

Because Consumers have failed to address the preliminary issue of whether a reviewing court is even entitled to deconstruct MISO transmission charges incurred by a utility into component allocations where the PSC has not done so (or that the PSC was required to do so in the first place—a decision of the PSC that was not challenged by Consumers below or on appeal), we need not and do not address the "component" CWIP issue presently raised by Consumers in their appeal.[13]

Point III is denied.

### Conclusion

Finding no error, we affirm the PSC's 2012 Report and Order.

LISA WHITE HARDWICK, Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.

---

**12.** The PSC concluded that all of the costs for power paid by Ameren Missouri to MISO were for purchased power, even though, as Consumers point out, the power acquired by Ameren Missouri from MISO includes self-generated power. Because, as we discuss *supra*, Consumers did not preserve for our review whether "purchased power" for purposes of an FAC can include self-generated power sold or contributed to MISO, we reserve determination of that question until such time that the issue is properly preserved and presented on appeal.

**13.** *Ex gratia*, we note that Consumers' interpretation of the anti-CWIP statute, § 393.135, is more broad than the statute provides. Section 393.135 prohibits an electrical corporation from recovering any CWIP costs related to "any existing or new facility *of the electrical corporation.*" (Emphasis added.) Here, Ameren Missouri is the relevant "electrical corporation," and Consumers admit that the CWIP about which they complain relates to facilities that are *not* owned by Ameren Missouri.